IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

A.F.,

    Plaintiff,

v.                                                                                               Civ. No. 23-879 KG/GBW

G6 Hospitality, LLC,

    Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL

This matter comes before the Court on Plaintiff's Motion to Compel Discovery Regarding Defendant G6's Corporate Knowledge of Human Sex Trafficking. *Doc. 57*. Having considered the Motion, the attendant briefing (*docs. 60, 62*) and the parties' oral arguments (*doc. 66*), the Court will GRANT the Motion IN PART and DENY the Motion IN PART as described below.[1]

The instant controversy between the parties relates to the scope of proportional discovery related to corporate knowledge of human sex trafficking. Specifically, the parties disagree as to whether that discovery should be limited to knowledge related to Defendant G6 Hospitality, LLC's ("G6") Albuquerque Motel 6 or should include knowledge across G6's other properties. Further, the parties disagree about whether

---

[1] As noted at the hearing, the Court has considered the entirety of Plaintiff's Reply Brief despite it exceeding the permissible page limit. Consequently, the Court grants *nunc pro tunc* Plaintiff's Motion to Exceed the Page Limit Permitted for Reply Briefs (*doc. 65*).

1

the discovery should reach back three or five years prior to the incidents related to Plaintiff, A.F.

The proper scope of discovery is any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id*.

Given this standard, the Court will first consider whether the discovery sought is relevant to Plaintiff's claim and, if so, the degree of relevance. To establish her claim under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), Plaintiff must establish Defendant "(1) knowingly benefitted, financially or by receiving anything of value, (2) from participation in a venture that, (3) they knew or should have known has engaged in an act [of sex trafficking]." *Doe (S.C.) v. Sheraton, LLC*, 2024 WL 1329422, at *3 (D.N.M. Mar. 28, 2024) (Gonzales, K.) (citations omitted). The "corporate knowledge" discovery sought by Plaintiff relates to the third element. Crucially, the knowledge required to satisfy this element relates to the "venture" involved in

Plaintiff's[2] case, not sex trafficking in general. *Id*. at *4.  Given this "venture-specific" knowledge requirement, many courts have held that general knowledge of sex trafficking at other hotels owned by a corporate defendant is insufficient to state a claim under the TVPRA.  *See e.g., H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 706 (E.D. Mich. 2020); *S.J. v. Choice Hotels Int'l*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020).  In contrast, some courts have concluded that corporate knowledge of "the prevalence of sex trafficking generally at their hotels and [a failure] to take adequate steps to train staff in order to prevent its occurrence" could, with other facts, establish a plausible TVPRA claim.  *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F.Supp.3d 959, 968 (S.D. Ohio 2019).  Regardless, the question of whether a fact is sufficient to establish an element does not entirely answer the question of whether it is relevant to that element.  While this Court agrees that generalized knowledge of sex trafficking at other properties is only lightly probative of the venture knowledge requirement, it can inform what measures might be reasonable to detect a sex trafficking venture.  As such, discovery on that knowledge would be at least somewhat relevant to the "should have known" portion of the element.

---

[2] To be clear, the Plaintiff need not show that the Defendant knew that she was being trafficked, only that the Defendant knew of the venture doing the trafficking.  *See Doe (S.C.) v. Sheraton, LLC*, 2024 WL 1329422, at *3 (D.N.M. Mar. 28, 2024) (Gonzales, K.) ("[K]nowledge is required with respect to the venture, not with respect to any particular person.").

3

As further discussed at the hearing, the Court will now turn to considering, given the limited relevance of corporate knowledge beyond G6's Albuquerque Motel 6, the proportionality of the discovery sought by Plaintiff.  As indicated by Plaintiff, she seeks a search of G6's custodial files for all:

1) Complaints, reviews, or surveys from customers, managers and/or employees, or any other complaints, reviews, or surveys G6 keeps or maintains in the regular course of business about sex trafficking, prostitution, or commercial sex at its company owned Motel 6 properties.

2) Customer data and other indicators of sex trafficking, prostitution, or commercial sex, web data indicating use of commercial sex websites [which is particularly relevant here as A.F. was advertised from G6's Albuquerque Motel 6], and data associated with reservations at G6's company owned Motel 6 properties.

3) Police reports, news reports, and internal reports generated by customers and employees, regarding sex trafficking, prostitution, commercial sex at G6's company owned Motel 6 properties.

4) Emails and communications (internal and external) related to knowledge of sex trafficking, prostitution, or commercial sex activities at G6's company owned Motel 6 properties or within the hotel industry generally, including but not limited to communication with the Polaris Project6 and ECPAT7 and other NGOs that assist hotels comply with the TVPRA.

5) Audits, assessments, studies, and/or training regarding the prevalence of human sex trafficking, prostitution, or commercial sex in the hotel industry.

6) Trainings, policies, procedures, standards, systems guidance, or requirements related to human sex trafficking, prostitution, or commercials sex, and documents related to promulgation and implementation of them, including drafts.

    7) Corporate meeting and/or conference notes related to any aspect of commercial sex, prostitution and/or sex trafficking at G6's company owned or franchised properties.

*See doc. 57* at 14-15. In addition to disputing the relevance of this discovery and other matters bearing on proportionality, Defendant presents substantial evidence of the burden and expense that permitting such discovery would entail. *See generally doc. 60*. The Court is broadly persuaded that the discovery sought would indeed impose a significant burden and expense on Defendant. Given the Court's conclusion that much of the discovery sought is only lightly probative of an element of Plaintiff's claim, the burden or expense of much of the proposed discovery outweighs its likely benefit. *See* Fed. R. Civ. P. 26(b)(1). Having conducted this weighing exercise on each category sought by Plaintiff, the Court concludes as follows:

(i)    The discovery requests falling into Categories 1, 2, and 3 above shall be limited to data and/or documents regarding sex trafficking, prostitution, or commercial sex at G6's Albuquerque Motel 6;

(ii)    The discovery requests falling into Category 4 above shall be limited to emails and communications from or to (a) management of G6's Albuquerque Motel 6, (b) the Director of Operations responsible for G6's Albuquerque Motel 6, (c) the Vice-President of Operations responsible for G6's Albuquerque Motel 6, and (d) the Regional Director responsible for G6's Albuquerque Motel 6;[3] and

(iii)    The discovery requests falling into Categories 5, 6, and 7 above shall be limited to the company-owned Motel 6 properties.

---

[3] Defendant need only search the relevant custodial files for the person in the position described above from the time they entered that position until three months after they left it.

In short, the Court holds that discovery within these limits is proportional to the needs of this case and discovery outside these limits is not.

Having determined the custodial files and topics therein which should be subject to search, the Court now turns to the dispute over the temporal scope. As noted above, the parties disagree about whether the discovery should reach back three or five years prior to the incidents related to A.F. Under Plaintiff's request, discovery would reach back to January 2012. Importantly, Defendants note that it "implemented its anti-trafficking training in 2016 (with discussions starting in 2014)." *Doc. 60* at 19-20. Given the increased burden and expense that comes with every temporal expansion into the past and the fact that a three-year lookback period will encompass G6's corporate-level discussions and decisions about its relevant policies and training, the Court will only allow discovery within the categories listed above back to January 2014.[4]

---

[4] As noted at the hearing, this temporal limitation applies to the discovery requests as they are currently formatted. This ruling would not prohibit Plaintiff from seeking an email chain which stretches before 2014, or earlier emails to or from particular relevant entities which can be easily searched for based on the name of the entity. Such requests, of course, would still be subject to a separate proportionality analysis if opposed.

As further discussed at the hearing, the Court will, at this time, leave the specifics of the search protocols to counsel.  Further, the Court notes that neither party seeks expenses pursuant to Rule 37, so none will be ordered.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE