**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

A.F., an Individual,

        Plaintiff,

    v.

G6 HOSPITALITY, LLC.

        Defendant.

Case No. 1:23-cv-00879-KG-GBW

**G6 HOSPITALITY LLC'S
MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

STATEMENT OF UNDISPUTED FACTS ....................................................................... 2

    A.    Plaintiff A.F. ....................................................................................... 2

    B.    Plaintiff's Relationship with Her Alleged Trafficker. ............................ 3

    C.    Plaintiff's Alleged Trafficking at the Albuquerque Motel 6 ................... 4

    D.    Security and Anti-Human Trafficking Measures at the Albuquerque Motel 6 ................................................................................................ 6

LEGAL STANDARD ........................................................................................................ 7

ARGUMENT ..................................................................................................................... 8

    I.    Plaintiff's Participant Claim Under the TVPRA Fails. ........................... 8

    A.    G6 Did Not Participate in a Venture .......................................................... 9

    B.    G6 Did Not Knowingly Benefit from Participating in a Venture that Trafficked Plaintiff. ................................................................................ 13

    C.    Plaintiff Was Not Trafficked by the Alleged Venture. ........................... 14

    D.    G6 Neither Knew Nor Should Have Known About the Venture's Trafficking Violations. ............................................................................. 15

        1.    Defendant Neither Knew Nor Should Have Known that the Venture "Harbored" Plaintiff. ...................................................... 16

        2.    G6 Neither Knew Nor Should Have Known that Force, Fraud, or Coercion Caused Plaintiff to Engage in Commercial Sex. ........................................................................ 17

        3.    Any Assertions About Sex Trafficking Involving Other Ventures or Hotels Is Not Relevant, Let Alone Sufficient. ......... 20

CONCLUSION ................................................................................................................. 22

# TABLE OF AUTHORITIES

**Page**

**CASES**

*A.B. v. Extended Stay Am. Inc.*,
2023 WL 5951390 (W.D. Wash. Sept. 13, 2023) ................................................................18

*A.B. v. Wyndham Hotels & Resorts, Inc.*,
532 F. Supp. 3d 1018 (D. Or. 2021) ..................................................................................9, 17

*A.C. v. Red Roof Inns, Inc.*,
2020 WL 3256261 (S.D. Ohio June 16, 2020) ......................................................................19

*Anderson v. Liberty Lobby*,
477 U.S. 242 (1986) ................................................................................................................8

*B.C. v. G6 Hosp. Prop. LLC*,
2025 WL 1837620 (W.D. Wash. July 3, 2025) ..............................................................16, 21

*B.J. v. G6 Hosp., LLC*,
2023 WL 3569979 (N.D. Cal. May 19, 2023) ......................................................................21

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................................................................................................8

*Digit. Ally, Inc. v. Z3 Tech., LLC*,
754 F.3d 802 (10th Cir. 2014) ................................................................................................7

*Doe #1 v. Red Roof Inns*,
21 F.4th 714 (11th Cir. 2021) ........................................................................................ passim

*Doe #1 v. Twitter, Inc.*,
2023 WL 3220912 (9th Cir. May 3, 2023) ............................................................................12

*Doe 1 v. Apple Inc.*,
96 F.4th 403 (D.C. Cir. 2024) ......................................................................................9, 12, 14

*Doe No. 1 v. Rajveer LLC*,
2025 WL 907890 (M.D. Ala. Mar. 25, 2025) ......................................................................16

*Does 1-6 v. Reddit*,
51 F.4th 1137 (9th Cir. 2022) ................................................................................................14

*EEOC v. Lab'ys*,
　2011 WL 13086243 (D.N.M. Feb. 7, 2011) ...................................................................8

*Est. of Beauford v. Mesa Cnty., Colo.*,
　35 F.4th 1248 (10th Cir. 2022) ......................................................................................8

*G.G. v. Salesforce.com, Inc.*,
　76 F.4th 544 (7th Cir. 2023) ................................................................................. passim

*G.W. v. Northbrook Indus., Inc.*,
　739 F. Supp. 3d 1243 (N.D. Ga. 2024) ....................................................................12, 13

*H.G. v. Inter-Cont'l Hotels Corp.*,
　489 F. Supp. 3d 697 (E.D. Mich. 2020)........................................................................21

*H.H. v. G6 Hosp., LLC*,
　2019 WL 6682152 (S.D. Ohio Dec. 6, 2019) ...............................................................14

*Hall v. Bellmon*,
　935 F.2d 1106 (10th Cir. 1991) .....................................................................................8

*K.H. v. Riti, Inc.*,
　2024 WL 505063 (11th Cir. Feb. 9, 2024) ..............................................................10, 12

*L.M. v. 42 Raleigh, LLC*,
　2024 WL 4204906 (E.D.N.C. Sept. 16, 2024)..........................................................16, 21

*Lawmaster v. Ward*,
　125 F.3d 1341 (10th Cir. 1997) ..................................................................................8, 10

*Lundstrom v. Choice Hotels Int'l, Inc.*,
　2021 WL 5579117 (D. Colo. Nov. 30, 2021) ...............................................................16

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
　425 F. Supp. 3d 959 (S.D. Ohio 2019) .......................................................................8, 12

*Parker v. Bally's Corp.*,
　2025 WL 2421231 (D. Nev. Aug. 20, 2025) .................................................................16

*Pinkerton v. United States*,
　328 U.S. 640 (1946)......................................................................................................15

*Pioneer Centres Holding Co. v. Alerus Fin., N.A.*,
　858 F.3d 1324 (10th Cir. 2017) ....................................................................................11

*Reyes v. Waples Mobile Home Park Ltd.*,
　91 F.4th 270 (4th Cir. 2024) ..................................................................................16

*Ricchio v. McLean*,
　853 F.3d 553 (1st Cir. 2017) ..................................................................................18

*S.A.S. v. Hilton Domestic Op. Co. Inc.*,
　__ F. Supp. 3d __, 2025 WL 2306579 (W.D. Wash. Aug. 11, 2025) ....................13

*S.C. v. Sheraton, LLC*,
　2024 WL 1329422 (D.N.M. Mar. 28, 2024) (Gonzales, J.) ........................... passim

*S.C. v. Wyndham Hotels & Resorts, Inc.*,
　2024 WL 2186173 (N.D. Ohio May 15, 2024) .......................................................13

*S.J. v. Choice Hotels Int'l, Inc.*,
　473 F. Supp. 3d 147 (E.D.N.Y. 2020) ..............................................................20, 21

*Sealock v. Colorado*,
　218 F.3d 1205 (10th Cir. 2000) ................................................................................8

*Serna v. Colo. Dep't of Corr.*,
　455 F.3d 1146 (10th Cir. 2006) ................................................................................8

*T.S. v. Wyndham Hotels & Resorts, Inc.*,
　2024 WL 3927382 (D. Minn. Aug. 23, 2024) ..........................................................9

*Walcott v. United States*,
　782 F. App'x 728 (10th Cir. 2019) ........................................................................12

**STATUTES**

18 U.S.C. § 1591 ..............................................................................................................16, 17

18 U.S.C. § 1595 ....................................................................................................................17

**RULES**

Fed. R. Civ. P. 11(c) ................................................................................................................1

Fed. R. Civ. P. 56 ................................................................................................................1, 7

Fed. R. Evid. 803(7) ..............................................................................................................13

Local Rule 56.1 ........................................................................................................................1

**OTHER AUTHORITIES**

46 Am. Jur. 2d Joint Ventures § 37 ..........................................................................................15

Black's Law Dictionary (6th ed. 1990)......................................................................................16

48A Corpus Juris Secundum Ventures § 62 ..............................................................................15

Defendant G6 Hospitality LLC (G6) moves this Court to enter an order granting summary judgment in its favor under Federal Rule of Civil Procedure 56 and Local Rule 56.1.

## INTRODUCTION

Plaintiff A.F. claims that her former partner sex-trafficked her at a Motel 6-branded property in New Mexico between 2017 and 2018. Plaintiff has not sued her former partner as a defendant. Instead, Plaintiff has sued G6 under the Trafficking Victims Protection Reauthorization Act (TVPRA), which permits a victim to sue the criminal "perpetrator" of her trafficking and "whoever knowingly benefits from participation in a venture which that person knew or should have known" perpetrated her trafficking. 18 U.S.C. § 1595(a).

Plaintiff's attorneys pleaded that their client was "repeatedly raped and otherwise sexually abused *hundreds of times* at [an] Albuquerque Motel 6 by G6"—to the point that G6 *participated in a* "*venture* which involved the harboring of Plaintiff and her trafficker *for the purposes of commercial sex induced by force, fraud, or coercion*." Dkt. 1 (Compl.) ¶¶ 53, 97 (emphasis added); *see* Dkt. 40 (FAC) ¶¶ 6, 49, 89. While these allegations are awful, discovery has revealed no support for them. In fact, the record shows that Plaintiff stayed at this property on only three nights, one that *she* rented, one that *she* rented but *refused to pay for*, and one that *her father* rented for her—to escape (as she testified) from her former partner. It is thus *impossible* that G6 participated in or benefited from a trafficking venture with Plaintiff's former partner, who never rented a room in connection with her alleged trafficking or interacted with staff. *See* 18 U.S.C. § 1595(a); Fed. R. Civ. P. 11(c) adv. comm. notes to 1993 amendment.

If that were not enough, the record contains no evidence that G6 "knew or should have known" that this supposed venture trafficked her in "violation" of the criminal code's sex-trafficking chapter. 18 U.S.C. § 1595(a). Plaintiff's own testimony *disclaimed* nearly all the "red flags" that her attorneys pleaded. *See* FAC ¶ 61 (*e.g.*, "stays one day at a time for several days in

a row; obvious signs of illegal drug use; an unusually large number of used condoms left in the trash; [and] large numbers of male visitors to and from A.F.'s room"). The lone "red flag" alleged in the complaint that even arguably finds support in the record is bruising that Plaintiff says she incurred during a one-night stay. But even if bruising alone were enough to put motel employees on notice of sex trafficking, Plaintiff could not testify that any employee in fact saw her bruising at all. In fact, when Plaintiff ultimately reported her former partner to law enforcement and handed over much of the same evidence she produced here, prosecutors charged and convicted the trafficker only of aggravated battery—not sex trafficking. On top of that, Plaintiff's only feedback to motel employees was to report that she enjoyed her stay, noting in a positive review that while the "AC was crappy" her experience was otherwise "overall good." G6 thus had notice of the *opposite* of sex trafficking.

G6 categorically condemns human trafficking in all its forms and has the utmost sympathy for its victims. All the same, Plaintiff bears the burden to support her claims with evidence. And in this case, the evidence lands far short of what her attorneys pleaded. That leaves the Court with just one thing to do: enter judgment as a matter of law on Plaintiff's claims and dismiss this action.

STATEMENT OF UNDISPUTED FACTS

**A.    Plaintiff A.F.**

1.    Plaintiff A.F. alleges that she was trafficked at the Motel 6 located at 8510 Pan American Freeway NE in Albuquerque, New Mexico, from approximately January 2017 to September 2018 by her former partner, P.F.[1] Ex. 1, Pl.'s Am. Suppl. Answers to Def.'s Interrog. ("ROG Resp.") Nos. 1, 5. Plaintiff testified that she has had a traumatic and troubled past. She

---

[1] Pursuant to the Protective Order in this case, Dkt. 23, G6 refers to Plaintiff and her alleged trafficker by their initials. G6 has moved to file under seal any document containing A.F.'s or P.F.'s identifying information.

attempted suicide at age 13; was raped at age 19, resulting in her first pregnancy and child; was subjected to domestic violence by multiple ex-partners; has a history of drug abuse, suicidal ideations, and self-mutilation; and has lost custody of all four of her children. Ex. 2, Tr. of Sept. 20, 2024 Dep. of A.F. (A.F. Tr.) 47:13-48:21, 73:23-75:9, 118:6-119:15, 121:4-25, 129:10-130:6.

**B.      Plaintiff's Relationship with Her Alleged Trafficker.**

2.      Although Plaintiff went to the same high school as her alleged trafficker, P.F., she did not meet him until after she dropped out in 2012. *Id.* 52:9-24. Plaintiff and P.F. started dating roughly a year later, *id.* 53:17-22, and had their first child together in October 2015, *id.* 40:19-41:2, 54:13-19. In 2017 and 2018, Plaintiff and P.F. used methamphetamine daily, used cocaine, and drank heavily. *Id.* 64:13-65:20, 67:13-17. Plaintiff testified that her and P.F.'s "on and off" relationship became violent around 2016, *id.* 55:20-21, 57:18-58:3, and that he "groomed her into trafficking" in early 2017, though she does not recall how, *id.* 138:10-19.

3.      In February 2017, one month after Plaintiff alleges that P.F. began trafficking her, Plaintiff's parents applied for custody of Plaintiff's and P.F.'s then-16-month-old child. Ex. 3, Verified App. for Ex Parte Order Regarding Legal and Physical Custody of Minor Child (Custody App.); *see also* A.F. Tr. 65:21-89:22 (A.F. testimony discussing Custody Application). Plaintiff's parents asserted that Plaintiff's behavior had "become increasingly erratic, unstable, and unsafe." Custody App. ¶ 6(A). The application explained, among other things, that Plaintiff had "admitted that she and [P.F. were] physically abusive to one another"; that Plaintiff and P.F. exchanged text messages "related to [Plaintiff] soliciting sex on Craig's List"; that Plaintiff was suicidal and engaged in self-harm; and that Plaintiff was texting with a drug dealer offering to sell food stamps for money to buy acid. *Id.* ¶¶ 6(F)–(S). Plaintiff and P.F. ultimately stipulated to an order granting custody of the child to Plaintiff's parents. A.F. Tr. 89:20-25.

4.      In June 2018, P.F. assaulted Plaintiff at the University Lodge Motel (not a Motel 6 property). *Id.* 109:16-23. Plaintiff testified that she "somehow left [her] sister a voicemail of [P.F.] strangling [her]," and that her family called the police. *Id.* 110:1-12. P.F. was arrested, pleaded guilty to aggravated battery, and was sentenced to three years in prison. *Id.* 117:1-9. Plaintiff's relationship with P.F. ended shortly thereafter; other than one message, Plaintiff has not had any contact with P.F. since he started his prison sentence. *Id.* 112:2-10.

5.      P.F. was never charged with sex trafficking, pandering, or pimping despite the family court's and law enforcement's awareness of P.F.'s and Plaintiff's relationship. And although Plaintiff informed the DA that P.F. trafficked her and provided the DA with all the materials she produced in this case, *id.* 117:15-25, 178:10-181:2, Plaintiff testified law enforcement's investigation did not yield a trafficking case against P.F. *Id.* 97:10-98:16.

**C.      Plaintiff's Alleged Trafficking at the Albuquerque Motel 6**

6.      Plaintiff alleges that P.F. trafficked her at the Albuquerque Motel 6 from January 2017 to September 2018. ROG Resp. No. 1. She cannot, however, provide any specific dates on which she was trafficked, nor can she explain how she came up with that alleged timeframe. A.F. Tr. 135:6-21. During that time, Plaintiff was either living with P.F., with her family, in her car, or on the street. *Id.* 90:14-91:8. When Plaintiff was at the Albuquerque Motel 6, she was there voluntarily and in a room that either she or her parents booked in an effort to get Plaintiff "away from [P.F.]." *Id.* 105:13-106:3, 106:8-10, 108:4-8, 108:17-21, 147:8-17; *see also id.* 107:16-18; ROG Resp. No. 1 (stating that Plaintiff was "trafficked" in rooms "her mother, father, or grandmother would pay for" to "keep[] her … away from her trafficker").

7.      Notwithstanding her allegations, Plaintiff testified that she can recall only *two* specific incidents of P.F. trafficking her at the property. *Id.* 107:5-12. First, Plaintiff testified that she left the hotel and returned to find P.F. and a "black guy" in her room. *Id.* 108:22-109:3. Plaintiff

stated that the "black guy" "got on top of [her]" while P.F. watched, filmed, and masturbated. *Id.* 108:17-109:11, 141:18-142:6. Plaintiff did not see P.F. and the "black guy" exchange money and she did not suspect P.F. was engaging in commercial sex until "later on." *Id.* 143:10-12, 144:5-8. Second, Plaintiff testified that she again left the hotel and returned to find P.F. in her room "with his pants down." *Id.* 145:14-25. Plaintiff "chuckled" when she saw P.F.; then a man Plaintiff describes as "Arabian" "came out of the bathroom with a ski mask and rope." *Id.* 145:2-146:4. Plaintiff says she fought him for "a good minute," and when the "Arabian" realized that she was "really crying and wasn't just acting," he threw money at P.F. and left without any sexual contact. *Id.* 146:5-6, 146:14-23. Plaintiff does not remember the day, month, or year when these incidents occurred. *Id.* 106:25-107:2, 107:21-108:1. But she testified that both incidents would have occurred in rooms Plaintiff or her parents reserved in Plaintiff's name because P.F. "never" booked rooms at the Albuquerque Motel 6. *Id.* 107:16-18, 148:19-23.

8.    G6 has only three stay records for Plaintiff at the Albuquerque Motel 6 during the alleged trafficking period, each lasting only one night. Ex. 4, Decl. of Michael Grapes (Grapes Decl.) ¶ 6; Ex. 4A. Plaintiff does not recall details about any of these three stays—including reserving the rooms, checking in, how she got to the Motel 6, whether P.F. was with her, or whether she interacted with Motel 6 staff. A.F. Tr. 152:13-153:15, 154:17-158:3, 161:21-25. Notably, Plaintiff did not pay for two of these stays. Her father called the property and paid for the first stay by credit card, and her final stay went unpaid, which resulted in Plaintiff being placed on the "Do Not Rent" list. Grapes Decl. ¶¶ 7-8; *see also* Ex. 4A. G6 has no stay records for anyone in Plaintiff's family, including her parents or grandmother. Grapes Decl. ¶ 6.[2]

---

[2] G6 has only four confirmed stay records for P.F. at the Albuquerque Motel 6 during the alleged trafficking period, each for one night. Grapes Decl. ¶ 6. Plaintiff, however, does not recall

9.      Plaintiff has limited memory of interacting with Albuquerque Motel 6 staff during her alleged trafficking period. She recalled only a "bigger Hispanic lady" and a "dude that worked in the morning sometimes." A.F. Tr. 150:18-151:2, 153:16-23. Plaintiff never complained to staff that there were people in her room that were not supposed to be there, never asked for help, and never told any staff member that she was raped or trafficked at the hotel. *Id.* 153:24-154:16, 162:23-163:8. To the contrary, during her alleged trafficking period and after her final confirmed stay, Plaintiff reviewed the Albuquerque Motel 6, complaining only that the "AC was crappy" but otherwise commending her room as "**overall good**." Ex. 5, Decl. of Sean Walker (Walker Decl.) ¶ 9; Ex. 5E (emphasis added). And although Plaintiff speculated that hotel staff may have observed her "walk in with no black eyes and leave with black eyes," A.F. Tr. 168:3-5, she could not say whether the same employee saw her both arriving and leaving, *id.* 168:6-169:19. In fact, she could not say whether the front desk employee actually saw her leave at all, because she just "pass[ed] by" the front desk rather than checking out. *Id.*

10.     Plaintiff seeks damages for emotional distress she alleges she suffered as a result of P.F.'s trafficking. FAC ¶ 86. She has told case workers, however, that she "could be getting a large amount of money from a federal case action lawsuit … vs Motel 6," and that "her lawyers are encouraging her to have better mental health prior to trial." Ex. 6.

**D.      Security and Anti-Human Trafficking Measures at the Albuquerque Motel 6**

11.     At all times during Plaintiff's alleged trafficking period, G6 contracted with Securitas Security Services USA, Inc., a professional security company, to provide additional monitoring of the Albuquerque Motel 6. Walker Decl. ¶¶ 3–4; Ex. 5A. In 2017 and 2018, security guards were on-site six days per week and eight hours per night. *Id.* These measures supplemented

---

P.F. ever booking rooms at the motel, A.F. Tr. 164:3-165:9, and she expressly disclaimed that her alleged trafficking ever occurred in a room that P.F. booked, *id.* 106:8-20, 107:16-18, 148:19-23.

G6's safety and security policies and procedures that were designed to identify and limit crime—including commercial sex of any nature—on its properties. Walker Decl. ¶¶ 5–6, Ex. 5B.

12.     Plus, the Albuquerque Motel 6 had mandatory anti-trafficking training in place during Plaintiff's alleged trafficking period. Walker Decl. ¶ 7; Ex. 5C. The training taught staff how to identify vulnerabilities that might put an individual at risk for trafficking, identify indicators of trafficking, and report suspected trafficking. *Id.* G6 also tracked training completion rates, and all staff at the Albuquerque Motel 6 had completed or registered for the training during Plaintiff's alleged trafficking period. Walker Decl. ¶ 8; Ex. 5D.

13.     Incident reports (which reflect incidents ranging from accidents to crime), guest reports, and guest reviews from the Albuquerque Motel 6 confirm that G6's safety and security policies and training were effective. During Plaintiff's alleged trafficking period, there were only 128 incident reports at the Albuquerque Motel 6, none of which related to commercial sex or trafficking. Dkt. 60-3 ¶ 12. Additionally, no guest review or guest report mentions trafficking or signs of force, fraud, or coercion *at all*, and only two reviews out of nearly 2000 and one guest report out of nearly 300 mention prostitution. Dkt. 60-2 ¶¶ 18–20. The reports that mention prostitution, moreover, have no nexus to Plaintiff, P.F., or the dates of either of their stays—to the contrary, they are either before or months away from those stays. Walker Decl ¶ 9; Ex. 5E.

### LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Digit. Ally, Inc. v. Z3 Tech., LLC*, 754 F.3d 802, 810 (10th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law, and the dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Est. of Beauford v. Mesa Cnty., Colo.*, 35 F.4th 1248, 1261 (10th Cir. 2022); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

G6 is not required to prove a negative. It can meet its burden on summary judgment "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case" after the close of fact discovery. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "At the summary judgment stage," Plaintiff "has an obligation to 'present some evidence to support the allegations; mere allegations, without more, are insufficient to avoid summary judgment.'" *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1150–51 (10th Cir. 2006) (quoting *Lawmaster v. Ward*, 125 F.3d 1341, 1349 (10th Cir. 1997)). Thus, to survive summary judgment, Plaintiff must "designate specific facts so as to make a showing sufficient to establish the existence of [each] element essential to that party's case." *Id.* at 1151 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)). Plaintiff's own "self-serving" testimony is "not sufficient to create a genuine dispute of material fact." *EEOC v. Lab'ys*, 2011 WL 13086243, at \*4 (D.N.M. Feb. 7, 2011) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991)).

## ARGUMENT

### I.    Plaintiff's Participant Claim Under the TVPRA Fails.

A TVPRA participant claim requires Plaintiff to prove four elements: (1) the defendant "participat[ed] in a venture"; (2) the defendant "knowingly benefited from participation in [that] venture"; (3) the "venture" "engaged in an act in violation of this chapter" (*i.e.*, § 1591(a)), "of" which the plaintiff was the "victim"; and (4) that the defendant "knew or should have known" of the venture's "violation." 18 U.S.C. § 1595(a); *see Doe #1 v. Red Roof Inns*, 21 F.4th 714, 723 (11th Cir. 2021); *S.C. v. Sheraton, LLC*, 2024 WL 1329422, at \*3 (D.N.M. Mar. 28, 2024) (Gonzales, J.) (citing *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019). Plaintiff cannot satisfy any of these elements.

## A.    G6 Did Not Participate in a Venture

This Court "applies the plain meaning of 'participation in a venture' which requires a plaintiff to 'allege that the [defendant] took part in a common undertaking or enterprise involving risk and potential profit' which violates the TVPRA." *S.C.*, 2024 WL 1329422, at *5 (quoting *Red Roof Inns*, 21 F.4th at 725); *see Doe 1 v. Apple Inc.*, 96 F.4th 403, 415–16 (D.C. Cir. 2024) (similar).[3]

1.    To begin, there is no evidence to support Plaintiff's theory that G6 participated in a sex-trafficking venture with her former partner. The Eleventh Circuit's *Red Roof Inns* decision, which this Court relied on in *S.C.*, remains instructive. There, the court looked to the plaintiffs' complaint to determine how the plaintiffs "frame[d] the ventures at issue." *Red Roof Inns*, 21 F.4th at 727. The plaintiffs alleged ventures that comprised "traffickers, the hotel's employees, management, owners, and franchisor, as well as others involved in … sex trafficking." *Id.* at 720. The defendant hotel franchisors, the plaintiffs claimed, "accommodate[d], facilitate[d], and participate[d] in … sex trafficking." *Id.* (alteration in original). On that complaint, the court explained, the plaintiffs had theorized—but failed to adequately plead—a sex-trafficking venture. *Id.* at 727. The complaints lacked "plausible allegations that the franchisors took part in the

---

[3] The key feature of this element is that the enterprise must be "shared"—the parties to the enterprise must share a common goal and take steps to further that goal. *Apple*, 96 F.4th at 415 (emphasis added).  For that reason, "ordinary buyer-seller transaction[s]"—even if one party knows or should know that the other party is a trafficker—is not a shared venture: while transactions may provide a mutual benefit to the parties, the parties do not associate in furtherance of a common end. *See id.* (citing § 1595(a)); *see also G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 562 (7th Cir. 2023) (holding that the "arm's-length" sale of "off-the-shelf products," even on a repeated basis, does not satisfy the "participation in a venture" element). Were the rule otherwise, then companies across all industries—from airlines, to gas stations, to utility companies—would effectively face strict liability for engaging in commercial transactions with suspected traffickers. *Cf. T.S. v. Wyndham Hotels & Resorts, Inc.*, 2024 WL 3927382, at *10 (D. Minn. Aug. 23, 2024). That would effectively impose a federal statutory duty on all companies to police and prevent sex trafficking—a duty that the federal courts uniformly hold does not exist. *A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1027 (D. Or. 2021) (collecting cases). *Contra* FAC ¶ 29.

common undertaking of sex trafficking." *Id.* The Eleventh Circuit later confirmed that similar allegations against hotel franchisees were insufficient. *See K.H. v. Riti, Inc.*, 2024 WL 505063, at *3 (11th Cir. Feb. 9, 2024). "[A]s we made clear in *Red Roof*," the court held, "allegations of financial benefit alone are not sufficient to establish that the defendant participated in a sex trafficking venture and observing signs of sex trafficking 'is not the same as participating in it.'" *Id.* (quoting *Red Roof Inns*, 21 F.4th at 726).

Like the *Red Roof* and *K.H.* plaintiffs, Plaintiff here alleges that G6 participated in a sex-trafficking venture that "involved the harboring of Plaintiff and her trafficker *for the purposes of commercial sex induced by force, fraud, or coercion.*" FAC ¶ 89 (emphasis added); *see, e.g.*, *id.* ¶ 8 (alleging Defendant "participat[ed] in a venture *furthering her trafficking*"), ¶ 16 ("[Defendant] … participated in a commercial venture by renting rooms *for human trafficking.*"), ¶ 18 ("Defendant … participat[ed] in a commercial business venture that it knew or should have known to be *engaging in sex trafficking acts.*") (emphases added). At summary judgment, Plaintiff's theory thus requires her to point to "specific facts" establishing that G6 "took part in the common undertaking of sex trafficking" with her trafficker. *Lawmaster*, 125 F.3d at 1349; *Red Roof Inns*, 21 F.4th at 726.

Here, the record belies that the hotel participated in a sex-trafficking venture. Plaintiff testified that she was trafficked at the subject property *only* on two occasions, when *she* or a *family member* booked a room; her former partner, P.F., "never" booked or even paid for rooms at the Albuquerque Motel 6 in connection with her trafficking. A.F. Tr. 107:16-18, 148:19-23. Plaintiff further testified that she only ever checked in voluntarily and to a room that she or her father had booked so that she could *get "away from"* P.F. *Id.* 105:13-16, 106:8-10, 108:4-8, 108:17-24; *see also id.* 107:16-18. *Contra* FAC ¶¶ 6, 39 (alleging that P.F. "forced" Plaintiff to rent rooms and

stay at the Albuquerque Motel 6). G6's comprehensive search of its business records confirms Plaintiff's testimony, turning up only three stays under Plaintiff's name. Grapes Decl. ¶ 6; Ex. 4A. Of those three one-night stays, Plaintiff's father paid for one, Plaintiff herself paid for the second, and no one paid for the third. *See id.* Renting a room to Plaintiff or her father (especially to *escape* abuse) does not support the existence of a common purpose between the hotel and her former partner to facilitate her trafficking—it disproves it.[4]

The anti-crime and anti-trafficking measures in place at the hotel only further disprove Plaintiff's theory. During the alleged trafficking period, all Motel 6 properties had safety and security policies in place designed to identify and limit crime, including prostitution and sex trafficking, as well as specific anti-trafficking training. Walker Decl. ¶¶ 5–7; Ex. 5B. And G6's records show that all Albuquerque Motel 6 staff had completed or registered for anti-trafficking training during the alleged trafficking period. Walker Decl. ¶ 8; Ex. 5C. Plus, G6 backstopped its employees' training by contracting with a private security company. Walker Decl. ¶¶ 3–4; Ex. 5A. These comprehensive measures to combat human trafficking further belie any "common undertaking of sex trafficking" between G6 and P.F. *See Red Roof Inns*, 21 F.4th at 727; *see also infra* Part I.C.

2.    Because discovery has revealed no support for the sex-trafficking venture pleaded in this case, Plaintiff may try to pivot to allege a so-called "commercial business venture" theory. *Cf.* FAC ¶ 24(d) (describing a "commercial business venture which unlawfully permitted criminals

---

[4] Plaintiff speculated without corroboration that a motel employee "had to have let [P.F.] in[to]" her room during one or both of the alleged incidents. A.F. Tr. 161:5–11; *see* ROG Resp. 6. But "[t]o defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Pioneer Centres Holding Co. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1334 (10th Cir. 2017). And there is no evidence suggesting that even assuming that this occurred, it reflected an agreement to facilitate Plaintiff's *trafficking*.

to sell A.F. for commercial sex"). While this Court should not permit Plaintiff to amend her complaint in an opposition brief, that theory would fail in any event. *See S.C.*, 2024 WL 1329422, at *6 (observing that "this 'commercial venture' is unclear to the Court and hardly, if at all, ple[]d in Plaintiff's FAC"); *see also Walcott v. United States*, 782 F. App'x 728, 734 (10th Cir. 2019).

To start, one hotel entity cannot "participat[e]" in a "venture" with *itself. Red Roof Inns*, 21 F.4th at 725 (to "participate" is to "take part in or share *with others* in common or in an association" (emphasis added)). Regardless, "simply running a hotel" does not "satisf[y] the participation prong." *G.W. v. Northbrook Indus., Inc.*, 739 F. Supp. 3d 1243, 1251 (N.D. Ga. 2024). "[I]f that were true, the participation requirement would automatically be satisfied any time the defendant is a hotel operator or other commercial entity, irrespective of whether the entity had any involvement in the plaintiff's trafficking." *Id.*; *see also S.C.*, 2024 WL 1329422, at *6 (rejecting "commercial venture" theory).

Nor can Plaintiff prevail under the theory that G6 had a "continuous business relationship" with her former partner. *S.C.*, 2024 WL 1329422, at *4 (citing *M.A.*, 425 F. Supp. 3d at 970); *see M.A.*, 425 F. Supp. 3d at 971 (finding the test satisfied if a hotel "rented rooms to people it knew or should have known were engaged in sex trafficking"). While this theory fails as a matter of law,[5] it is not satisfied here in any event. Plaintiff consistently testified that she was trafficked on

---

[5] This test conflates § 1595(a)'s *actus reus* (e.g., "participation in a venture") and *mens rea* ("knew or should have known") elements. And the test finds no support in any federal circuit precedent addressing the "participation in a venture" element. *See, e.g.*, *K.H.*, 2024 WL 505063, at *2 n.5 ("declin[ing] to follow" the "continuous business relationship" "test" because it is "not set out in the statute or described in our caselaw"); *Doe #1 v. Twitter, Inc.*, 2023 WL 3220912, at *1 (9th Cir. May 3, 2023) ("requir[ing] a more active degree of 'participation in the venture' than a 'continuous business relationship'"); *G.G.*, 76 F.4th at 560 ("providing . . . common products or services"—even on a "continuous" basis—is insufficient, regardless of knowledge); *Apple*, 96 F.4th at 408, 415 ("buyer-seller transaction[s]" are insufficient, even with "full knowledge" of the other party's trafficking).

only two occasions, during which *she* or *her father* rented rooms. *Supra* C.6-7. And even on those occasions, nothing in the record suggests that the hotel ever even interacted with P.F., much less participated in an illicit venture with him. *See, e.g.*, *S.C. v. Wyndham Hotels & Resorts, Inc.*, 2024 WL 2186173, at *3 (N.D. Ohio May 15, 2024) (affirming that "summary judgment" was proper because "Defendants had no contact with *[plaintiff's] traffickers*" and the "lack of direct contact showed a lack of participation"). Even to the extent that Plaintiff or her father could somehow have participated in a venture that trafficked her, she refused to pay for her third stay—and G6 thus placed her on a Do Not Rent list. How a hotel could be said to have participated in a venture with someone who it banned from its premises defies all logic.

In all events, there were only *three* room rentals associated with Plaintiff. *See* Fed. R. Evid. 803(7) (noting the absence of other business records "prove[s]" that the other records "do not … exist"). And three room rentals—particularly at a hotel that rents "numerous rooms" "365 nights a year"—cannot *possibly* satisfy this standard. *G.W.*, 739 F. Supp. 3d at 1251 ("total of only eleven nights in three different months" does not amount to a "special relationship or common venture"); *see, e.g.*, *S.A.S. v. Hilton Domestic Op. Co. Inc.*, __ F. Supp. 3d __, 2025 WL 2306579, at *12 (W.D. Wash. Aug. 11, 2025) ("30 to 60 non-consecutive days … is simply not enough for a reasonable jury to find a continuous business relationship.").

In sum, no reasonable jury could find that G6 participated in any venture with Plaintiff's former partner or otherwise. Summary judgment must enter in G6's favor on this element alone.

**B.    G6 Did Not Knowingly Benefit from Participating in a Venture that Trafficked Plaintiff.**

Next, no reasonable jury could find that G6 "knowingly benefit[ed]" "from participation in a venture" with Plaintiff's former partner. This Court has previously held that the "knowingly benefit" element "requires that Defendant knowingly receive a financial benefit' *from a*

-13-

*relationship with the trafficker.*" *S.C.*, 2024 WL 1329422, at \*3 (quoting *H.H. v. G6 Hosp., LLC*, 2019 WL 6682152, at \*2 (S.D. Ohio Dec. 6, 2019)) (emphasis added); *see also, e.g.*, *Does 1-6 v. Reddit*, 51 F.4th 1137, 1145 (9th Cir. 2022) (noting that "knowingly benefitting from participation in such a venture requires actual knowledge and 'a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit'"). This element does not apply here.

*First*, there is no evidence that P.F. paid for either stay when Plaintiff alleges that she was trafficked. *Supra* C.6-7. Indeed, Plaintiff testified that P.F. did *not* rent the rooms when she was allegedly trafficked. A.F. Tr. 148:19-23. G6 could not have "knowingly" received a "financial benefit" from "a relationship" with a person who *never paid for* the room and otherwise never even *interacted* with hotel staff on these occasions. *See S.C.*, 2024 WL 1329422, at \*3. Moreover, Plaintiff testified that the rooms were booked to *escape* her trafficker. A.F. Tr. 105:13-16, 106:8-10, 108:4-8, 108:17-24, 147:8-17; *see also id.* 107:16-18; ROG Resp. No. 1. So even if Plaintiff could prove that G6 and P.F. had a "relationship," the at-issue stays happened *in spite of*—not because of—any such relationship.

*Second*, even assuming that G6 benefitted from a room where P.F. trafficked Plaintiff, G6 would have received—at most—one-hundred dollars in revenue for two room rentals. Indeed, Plaintiff refused to pay for the room on her third stay, which resulted in her placement on the Do Not Rent list. Grapes Decl. ¶ 7; *see* Ex. 4A. And G6's expenditures on anti-trafficking training and security measures on this property alone would have far exceeded this amount. That does not suffice to show that G6 "knowingly benefit[ed] … *from participation in a venture*." 18 U.S.C. § 1595(a) (emphasis added). Rather, that revenue resulted from two "arms-length transaction[s]," *see Apple*, 96 F.4th at 415, which do not qualify as a knowing benefit from an illicit venture.

### C.    Plaintiff Was Not Trafficked by the Alleged *Venture*.

Plaintiff also cannot prevail on her claims unless she shows that G6 "participated in a

-14-

venture *which violated the TVPRA*"—not merely that *someone* in a venture violated the TVPRA. *S.C.*, 2024 WL 1329422, at *5. Consider, by way of analogy, the law of conspiracy—a defendant is not liable for all the acts of a co-conspirator, but only those acts that are within the scope of the conspiracy. *See Pinkerton v. United States*, 328 U.S. 640, 647–48 (1946) (defendant not liable for substantive offense committed by co-conspirator if the offense "did not fall within the scope of the unlawful project"). So too for ventures. *See, e.g.*, 46 Am. Jur. 2d Joint Ventures § 37 ("[J]oint venturers may bear responsibility for the defalcations of their partners performed within the scope of the joint venture."); 48A Corpus Juris Secundum Ventures § 62 ("[W]here a member of a joint enterprise commits a wrongful and malicious tort not within the actual or apparent scope of the agency or the common business of the particular venture, without the other members' assent, concurrence, or ratification, then the other associates are not liable for the harm caused thereby.").

Here, no evidence shows that trafficking was within the scope of *any* venture with G6. Instead, the record demonstrates—at most—that P.F. *himself* violated the TVPRA. *Not* that any G6 *venture* with or apart from P.F. violated the TVPRA. Indeed, Plaintiff testified again and again that she was trafficked twice at the Albuquerque Motel 6, and only when she or her family members rented rooms to get "away from" P.F. A.F. Tr. 105:13-16, 106:8-10, 108:4-8, 108:17-24. So even if a venture based on room rentals or otherwise existed between P.F. and G6, any trafficking fell well outside its scope. Summary judgment must enter on this element, too.

### D.    G6 Neither Knew Nor Should Have Known About the Venture's Trafficking Violations.

Plaintiff's claim lastly requires her to prove that G6 "knew or should have known" that the venture "engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a). At least where, as here, the alleged venture "involve[s] the trafficking of only one victim," "knowledge of the specific victim goes hand-in-glove with knowledge of the 'venture.'" *G.G.*, 76 F.4th at 557. *See* FAC

-15-

¶¶ 24(d), 89 (only alleging Plaintiff as the victim of G6's alleged venture with her former partner).[6]

Plaintiff cannot prove this element for several reasons. *First*, G6 had no knowledge that Plaintiff was ever "harbored" at a Motel 6 property, much less by a venture with her former partner. *Second*, G6 had no knowledge that "force, threats of force, fraud, or coercion" were "used to cause [her] to engage in a commercial sex act." 18 U.S.C. § 1591. *Third*, Plaintiff cannot rely on supposed general knowledge of trafficking in the industry or at other properties to impute constructive knowledge of *her* trafficking to G6.

### 1.    Defendant Neither Knew Nor Should Have Known that the Venture "Harbored" Plaintiff.

To begin, Plaintiff must show that G6 knew or should have known that "the venture" in which G6 purportedly participated "harbored" her in violation of § 1591. FAC ¶ 89. Section 1591 is a criminal statute, and "in [this] context," to "harbor[]" "does not mean simply 'to house.'" *L.M. v. 42 Raleigh, LLC*, 2024 WL 4204906, at *5 (E.D.N.C. Sept. 16, 2024) (quoting *Reyes v. Waples Mobile Home Park Ltd.*, 91 F.4th 270, 278 (4th Cir. 2024)). Rather, a "common sense reading of the statute in this criminal context leads one to read 'harbor' to mean something akin to 'receiv[ing] clandestinely and without lawful authority a person for the purpose of so concealing him.'" *Doe No. 1 v. Rajveer LLC*, 2025 WL 907890, at *4 n.4 (M.D. Ala. Mar. 25, 2025) (quoting Black's Law Dictionary (6th ed. 1990)); *see, e.g.*, *Parker v. Bally's Corp.*, 2025 WL 2421231, at *5 (D.

---

[6] Many, if not most, courts have held that the TVPRA's text *always* requires plaintiff-specific knowledge. *See, e.g.*, *Red Roof Inns*, 21 F.4th at 726 ("knowledge" must be "as to the plaintiff"); *B.C. v. G6 Hosp. Prop. LLC*, 2025 WL 1837620, at *6 (W.D. Wash. July 3, 2025) (the hotel must or "should have known *sex trafficking . . .* of the *specific plaintiff* in question was occurring"); *Lundstrom v. Choice Hotels Int'l, Inc.*, 2021 WL 5579117, at *8 (D. Colo. Nov. 30, 2021) (knowledge must be of "the trafficking of plaintiff"). With good reason, as the text authorizes "[a]n individual who is a victim of a *violation of this chapter*"—*i.e.*, the plaintiff—to bring suit. 18 U.S.C. § 1595(a). It stands to reason that the defendant must always have actual or constructive knowledge of the specific "act in violation" of which the *plaintiff* is "a victim." *Id.*; *see G.G.*, 76 F.4th at 568–69 (Kirsch, J., dissenting). This Court need not wade into this split, however, given that Plaintiff's theory of liability requires plaintiff-specific knowledge.

Nev. Aug. 20, 2025) (rejecting the notion that "simply providing hotel rooms to guests (shelter), some of which then were used for commercial sex acts … equates to 'harboring'").

There is no evidence of "harboring" here, and Defendant could not have had actual or constructive knowledge of "harboring" that never happened. Plaintiff or her father rented a room on the three occasions in question. Plaintiff then checked *herself* in as an ordinary guest—accompanied by her parents on at least one occasion; she cannot even confirm that P.F. *ever* accompanied her with any certainty. *See* A.F. Tr. 148:8-9 ("Q. Did you ever check in with P.F.? A. Maybe once."), 147:8-17. She certainly did not check in with P.F. on either occasion that she says she was trafficked. On both occasions, Plaintiff checked in to get "away from [P.F.]" and encountered him only after leaving and returning to her room. *Id.* 105:13-16, 106:8-10, 108:4-8, 108:17-24. And Plaintiff even reviewed the property as "overall good." Ex. 5E.

In sum, from the motel's point of view, Plaintiff was a routine guest who exhibited no warning signs of being "harbored." And because the defendant must have actual or constructive knowledge of "harboring" to be liable, the Court should grant summary judgment on this basis.

### 2. G6 Neither Knew Nor Should Have Known that Force, Fraud, or Coercion Caused Plaintiff to Engage in Commercial Sex.

For the alleged trafficking period, G6 must have had actual or constructive knowledge of force, fraud, or coercion. 18 U.S.C. § 1591(a); *A.B.*, 532 F. Supp. 3d at 1028 ("In order to state a claim for civil liability under § 1595, Plaintiff must plausibly allege that G6 or their agents knew or should have known that Plaintiff was engaged in commercial sex activity on their property due to 'force, threats of force, fraud, coercion …, or any combination of such means.'"). Again, despite ample discovery, Plaintiff lacks the evidence needed to make this showing.

Initially, the motel could not have known or even suspected that Plaintiff was being caused to engage in commercial sex *at all*. Plaintiff testified that she *herself* "had no idea" that the rooms

-17-

she booked to *escape* P.F. would eventually "be used for" commercial sex. A.F. Tr. 155:9-12. Only "later on" did she realize her trafficker was engaging in commercial sex. *Id.* 143:10-12, 144:5-8. If Plaintiff did not know these stays would result in the trafficking-by-ambush incidents she described in her deposition, motel staff could not possibly have known, either.

In any event, the record generally supports none of the "red flags" Plaintiff alleged in her complaint. FAC ¶ 61. To start, Plaintiff alleged "booking and paying for stays one day at a time for several days in a row" raised a red flag. *Id.* But Plaintiff's three one-night stays were separated by a matter of months. Grapes Decl. ¶ 6, Ex. 4A. The two trafficking incidents Plaintiff's testimony described involved P.F. ambushing Plaintiff when she was staying at the hotel to get away from him; they involved no "soliciting on hotel grounds" that motel employees should have observed. *Contra* FAC ¶ 61. And the two men involved in each incident hardly constitute "large numbers of male visitors to and from [Plaintiff]'s room." *Contra id.* Finally, the record contains no evidence of "obvious signs of illegal drug use" or "an unusually large number of used condoms left in the trash" that motel employees should have seen. *Contra id.*

Nor, for that matter, does the record reveal any unpled red flags of the type found sufficient alleged in other TVPRA cases. *See, e.g.*, *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017) (describing an extreme fact pattern). Plaintiff came and went alone. A.F. Tr. 165:19-25. And again, Plaintiff checked in to get "away from [P.F.]" and encountered him on two occasions only after leaving and returning to her room. *Id.* 105:13-16, 106:8-10, 108:4-8, 108:17-24. So P.F. could not have been present during check-in to raise any red flags. *Cf. A.B. v. Extended Stay Am. Inc.*, 2023 WL 5951390, at *6 (W.D. Wash. Sept. 13, 2023) (finding *no* actual or constructive knowledge where "Plaintiff did not check in to the hotel with her trafficker" but rather "was given a hotel key outside in her trafficker's car and 'would then walk by herself through the lobby as an unregistered

-18-

guest and into the room without making eye contact'").

Nor does the record show that Plaintiff's clothing or payment methods should have raised staff suspicion. Plaintiff neither alleged nor testified that she was provocatively dressed. And Plaintiff or her father paid for the rooms. Grapes Decl. ¶ 8; Ex. 4A; *contra A.C. v. Red Roof Inns, Inc.*, 2020 WL 3256261, at *5 (S.D. Ohio June 16, 2020) (finding knowledge element satisfied in part because plaintiff "was routinely escorted by her traffickers in view of the front desk after her trafficker paid in cash for the rooms" and was "inappropriately dressed for travel").

That leaves only allegations that Plaintiff exhibited "visible signs of physical abuse" and that "noises of altercations and abuse" emanated from her room. FAC ¶ 61; *see also id.* ¶¶ 56, 59–60. But the record does not show that staff actually observed any of these signs—to the contrary, Plaintiff recalls no interaction with staff apart from "checking in." A.F. Tr. 157:5–7; *see also id.* 167:15-18 ("Q. Did [P.F.] abuse you in front of any Motel 6 employees? A. I don't recall."). And although Plaintiff testified that hotel staff would have observed her "walk in with no black eyes and leave with black eyes," apparently on the one or two occasions in question, she could not say whether the same employee saw her both arriving and leaving. *Id.* 168:3-5. In fact, because she "pass[ed] by" the front desk rather than checking out, she could not say whether any front desk employee saw her leave *at all*. *Id.* 168:6-169:19. Even if they had, though, visible injuries upon checkout do not give constructive knowledge of harboring for sex trafficking, *see supra* I.D.1— and certainly not in time to put motel staff on notice of trafficking *before* renting the room.

Indeed, P.F.'s eventual arrest and prosecution bears out the absence of red flags. In June 2018, P.F. assaulted Plaintiff, and her family called the police. *Id.* 109:16-110:12. Plaintiff provided law enforcement and prosecutors all of the evidence she produced in this case. *Id.* 117:15-22, 178:10-181:2. But although P.F. was charged and convicted of aggravated battery, Plaintiff's

evidence was not enough to charge P.F. for trafficking. *Id.* 97:10-98:16. Motel employees cannot be expected to glean constructive knowledge of trafficking from the same facts that law enforcement found insufficient even to give probable cause that trafficking happened.

Moreover and again, to top it all off, Plaintiff positively reviewed the hotel during her alleged trafficking period, stating that while the "AC was crappy" the property was "overall good." Ex. 5E. Especially in light of that review, G6 would not have even "been able to *guess*" that the venture in which it supposedly participated caused Plaintiff to engage in commercial sex by force, fraud, or coercion. *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) (emphasis added). G6 certainly did not "kn[o]w" and "should" not "have known" of the same. *Id.*

Because nothing in the record suggests that motel staff had actual or constructive knowledge that force, fraud, or coercion caused Plaintiff to engage in commercial sex, G6 cannot be liable. This Court should therefore grant summary judgment on this ground.

### 3. Any Assertions About Sex Trafficking Involving Other Ventures or Hotels Is Not Relevant, Let Alone Sufficient.

Given these obvious shortcomings, Plaintiff may try to redirect the Court's attention away from G6's knowledge of Plaintiff's or the venture's trafficking, and instead emphasize general trends in the hospitality industry, at other Motel 6-branded properties, or in the city of Albuquerque. *See, e.g.*, FAC ¶¶ 63–68. Yet as many courts (including this one) have recognized, "[g]eneral knowledge of commercial sex activity occurring at hotels" fails to evidence even constructive knowledge as a matter of law. *S.C.*, 2024 WL 1329422, at *4; *see, e.g.*, *Red Roof Inns*, 21 F.4th at 727 (rejecting allegations based on "online reviews mentioning prostitution and crime occurring generally at the hotels" and the like); *G.G.*, 76 F.4th at 557 ("[T]o allow allegations that a civil defendant was aware of sporadic sex trafficking in low-budget hotels generally to constructive knowledge of a particular sex trafficking venture 'unjustifiably bridges the scienter

gap between 'should have known' and 'might have been able to guess.'" (quoting *S.J.*, 473 F. Supp. 3d at 154)); *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 706 (E.D. Mich. 2020) ("[A]llegations that Defendants were generally aware of sex trafficking in the hotel industry and at some properties operating under their brand names fall short of establishing that Defendants knew or should have known of sex trafficking *by the ventures in which they purportedly participated*."). Indeed, if that were sufficient, the knowledge element would be reduced to a box-checking exercise, as every hospitality defendant is trying to prevent trafficking.

Plaintiff may also rely on crime data and anonymous (and inadmissible) reviews and reports of the relevant Motel 6 or other properties. That similarly goes nowhere, for two reasons. First, the alleged online review is irrelevant because not a single one references sex trafficking at the Motel 6; at most, it suggest instances of prostitution. FAC ¶ 69a. But courts across the country hold that signs of "criminal conduct other than sex trafficking, e.g., prostitution," do not support a hotel's constructive knowledge of sex trafficking. *B.J. v. G6 Hosp., LLC*, 2023 WL 3569979, at *6 (N.D. Cal. May 19, 2023). "Instead," and again, "the facts [must] indicat[e] that the staff should have known *sex trafficking*—not commercial sex work—of the *specific plaintiff* in question was occurring." *B.C.*, 2023 WL 183760, at *6; *see, e.g.*, *L.M.*, 717 F. Supp. 3d at 469 (citing cases).

Because Plaintiff cannot raise a genuine dispute of fact to show that Defendant "knew or should have known" about her trafficking (or indeed any trafficking), the Court should enter summary judgment on Plaintiff's participant claim on this basis as well.

*        *        *

In sum, Plaintiff has failed to establish that Defendant is liable for any sex trafficking on at least three independent grounds: it could not have participated in a venture with a trafficker who did not rent rooms for trafficking; it could not have knowingly benefited from participation in any such venture, given the trafficker's non-involvement in the room rentals and the absence of any

-21-

associated benefit; it did not and should not have known that any such venture violated the criminal code's sex-trafficking chapter. The most the evidence shows is that Plaintiff herself checked in at the subject motel trying to "get away" from her trafficker, that she or her father paid for her rooms (or did not pay at all), that even Plaintiff did not know when checking in that she would be trafficked, and that motel employees saw no red flags—indeed almost no red flags existed at all. That is far from sufficient to find that G6 was a *de facto* participant in sex trafficking.

## CONCLUSION

For the foregoing reasons, Defendant G6 Hospitality LLC requests that the Court grant its Motion for Summary Judgment and dismiss Plaintiff's claims with prejudice.

-22-

Dated: October 10, 2025

Respectfully submitted,

*/s/ Bethany K. Biesenthal*

Michael J. Gray (*pro hac vice)*
Bethany K. Biesenthal (*pro hac vice*)
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, Illinois 60606
Phone: (312) 269-1541
mjgray@jonesday.com
bbiesenthal@jonesday.com

Kate Wallace (*pro hac vice*)
JONES DAY
100 High Street, 21st Floor
Boston, Massachusetts 02110
Phone: (313) 739-3939
aclopton@jonesday.com

Andrew J. Clopton (*pro hac vice*)
Michigan Bar No. P80315
JONES DAY
150 W. Jefferson Ave., Suite 2100
Detroit, Michigan 48226
Phone: (313) 739-3939
aclopton@jonesday.com

Alex Walker
Modrall Sperling
500 Fourth Street NW, Suite 1000
Albuquerque, New Mexico 87103
Phone: (505) 848-1800
awalker@modrall.com

*Counsel for G6 Hospitality LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2025, I electronically filed the foregoing Defendant's Motion for Summary Judgment by using the CM/ECF system which will send a notice of electronic filing to all counsel or parties of record.


Dated: October 10, 2025                                   Respectfully submitted,

                                                           */s/ Bethany K. Biesenthal*
                                                          Bethany K. Biesenthal